No. 48,141

STATE OF KANSAS, *Appellee*, v. JAMES RUSSELL EATMON, JR., a/k/a "SMOKEY", *Appellant.*

(553 P. 2d 309)

Opinion filed July 23, 1976.

*Robert M. Brown,* of Topeka, argued the cause, and was on the brief for the appellant.

*Albert D. Keil,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, James Russell Eatmon, Jr., was convicted by a jury of selling a narcotic drug in violation of K. S. A. 1973 Supp. 65-4127a. The major point raised on the appeal is that the trial court erred in overruling the defendant's motion to suppress certain evidence consisting of marked currency which was obtained as the result of a search of defendant's person by Topeka police officers. The defendant contends that the evidence should have been suppressed for the reason that it was obtained as the fruits of an illegal search and seizure in violation of the defendant's rights under the Fourth Amendment to the United States Constitution. The basic question to be determined is whether or not the police officers had probable cause to stop and search the defendant. The same issue was raised after conviction in the defendant's motion for a new trial. In overruling the motion for a new trial the district court filed a well-written memorandum opinion which sets forth at length the decisive facts, outlines the issue, and states the considerations for its order and judgment in such manner and form that the opinion might well be incorporated in and made a part

of the opinion of an appellate court. We quote that portion pertaining to the search and seizure issue.

"MEMORANDUM DECISION

"The defendant has filed a motion for new trial stating five separate grounds. The principal ground relates to a motion of defendant to suppress certain evidence consisting of marked currency obtained as the fruits of a search and seizure which defendant contends was illegal.

"The evidence at the suppression hearing disclosed that during the evening hours on or about the 12th or 13th day of August, 1974, KBI Agent, Dave R. Ballentine, went to the residence of Mark Lynn, at 1501 Wayne Street, Topeka, Kansas, and purchased a small quantity of heroin. At that time Ballentine made arrangements with Lynn to purchase a larger quantity of the substance. Lynn informed Ballentine that he was going bowling and that Ballentine could return later that same evening to obtain the larger quantity. Ballentine then returned to his vehicle and marked a quantity of U. S. currency, which he intended to use for the second purchase. After the bills were marked, Ballentine went back to Lynn's residence with the currency. Thirty-five minutes later Vicki Lawyer entered the residence and handed Lynn a tin foil ball containing several packages of brownish powder, which Ballentine believed to be heroin. Ballentine examined the powder and paid $789.00 in marked currency to Lynn. Ballentine then departed with the evidence and drove his vehicle out of the area.

"Ballentine also testified that while he was negotiating with Lynn for the large purchase of heroin, it was necessary for Lynn to make a phone call to obtain the price for the larger buy, which was determined to be $800.00. Ballentine was $11.00 short. However, he was permitted to make the buy for the amount of $789.00. Ballentine further testified that shortly before his second visit to Lynn's residence during the time he was marking the currency in his vehicle, he observed a black over gold Buick with a Continental rear end, which he recognized as the defendant's car. This vehicle was in an alley approximately a block and a half from Lynn's residence in the vicinity of 15th and MacVicar. The driver of the Buick was a black male. Ballentine was unable to make any further identification. Ballentine further testified that during his second visit Lynn made another telephone call during which Ballentine overheard Lynn state that he 'had something for an individual.'

"Upon departing the Lynn residence after the second visit, Ballentine radioed to the surveillance team that the buy had been completed and that Lynn would be leaving to meet someone to give the money to, shortly.

"The evidence also disclosed that after the radio transmission, Guy Scott Teeselink, a law enforcement officer and member of the surveillance team, observed Lynn leave in a blue Honda, parked behind his residence. Teeselink followed him eastbound through the College Hill area to the vicinity of 12th and Lincoln Streets, where contact was lost. A very short period of time later officers K. C. Blodgett and Tom Sargent radioed that they had the Honda in sight and that it was circling the area on Munson Street where the defendant's vehicle and that of Blodgett and Sargent were parked.

"The evidence further disclosed that law enforcement officers K. C. Blodgett

and Tom Sargent were members of the surveillance team stationed in a separate vehicle. They followed the blue Honda driven by Lynn away from the area of the Lynn residence at 11:40 p. m. They lost contact briefly with the Honda in the vicinity of Huntoon and Lincoln Streets. During this period of time, said officers observed a 1971 Buick Electra 225, license No. SNE 7469, black over gold with Continental rear end, which the officers recognized as the defendant's, parked on Munson Street, between Lincoln and Lane Streets near an alley. No one was observed in the vehicle. The officers parked their vehicle on Munson Street and set up surveillance to see if the blue Honda would make contact. Within two or three minutes the Honda was again seen by the officers, circling the area where the defendant's vehicle was located. The Honda came out of the alley and drove past the parked Buick westbound on Munson. It then appeared to leave the area proceeding in the general direction of the Lynn residence.

"Moments later a negro male was observed by Blodgett and Sargent approaching and entering the defendant's vehicle. The officers could not determine the direction from which the individual approached. However, the officers did not observe him crossing Munson from the side opposite the alley. Blodgett and Sargent radioed Teeselink that Lynn was in route back to his residence and that the defendant's vehicle was moving and that they would attempt to stop it. Teeselink picked up the Honda at Munson and Washburn and followed it to Washburn and 15th Streets, where the Honda turned westbound in the direction of the Lynn residence. Upon receiving the radio transmission from Blodgett and Sargent that the defendant's vehicle was leaving the area, Teeselink dropped off the Honda and returned to the area to assist in stopping the Buick. However, Teeselink was advised by Blodgett and Sargent at 11:48 p. m. that they had lost contact with the defendant's vehicle. Both surveillance vehicles rendezvoused in a parking lot near 17th and Washburn. At 11:54 p. m. the defendant's vehicle was observed westbound on 17th Street passing the parking lot. The officers stopped defendant's vehicle at 17th and Oakley Streets. Defendant was driving, and Janice Pratt was a passenger. The defendant was instructed to step to the rear of the vehicle where he was searched, and a large quantity of the marked currency utilized by Ballentine in the second buy was discovered on defendant's person. The currency was seized as evidence. Mark Lynn is a white male, and the defendant is a black male.

"Defendant contends that this evidence should have been suppressed. He argues that the officers had no probable cause for search. Defendant further contends that the record fails to disclose any reasonable basis for the decision of Blodgett and Sargent to place defendant's vehicle under surveillance on Munson Street. In defendant's view of the evidence, the facts fail to show any relevant connection between the second purchase of heroin from Lynn and the defendant or his vehicle.

"Defendant's arguments are not persuasive. Lynn made two phone calls incident to the second purchase of heroin. The first was to obtain the price, and the second was to advise his contact that he 'had something for an individual'. It could have been reasonably inferred by Ballentine that Lynn had obtained the price from his supplier and then made contact again with the supplier to advise that $789.00 would be delivered as proceeds of the sale.

This was a reasonable inference in view of the size of the sale, the amount of money and the timing involved. Thus, Ballentine's radio transmission to the surveillance team to this affect was warranted under the circumstances. Moreover, Lynn's departure in the blue Honda, shortly after the sale, tended to further support such inference on the part of the surveillance team. Defendant's vehicle was distinctive in color and shape. The evidence discloses that the officers were familiar with it and recognized it as the defendant's on the night in question. Said vehicle was seen by Ballentine approximately a block and a half away from the Lynn residence in an alley shortly before the second buy. The timing and proximity of said vehicle was an additional circumstance tending to support the inference that defendant was in contact with Lynn.

"Defendant's contention that the officers were required to have reasonable grounds or probable cause *at the time they set up surveillance on defendant's vehicle,* is without merit. There is no such requirement in the law. Such surveillance did not violate defendant's rights. If the officers had decided to observe defendant's vehicle by reason of a mere 'hunch' or even by accident, it would be of no consequence. The law requires only that the surveillance team have probable cause *at the time defendant was stopped and searched* at 17th and Oakley Streets.

"All of the circumstances taken together at the time of the search provided probable cause. Such factors as the sighting of defendant's vehicle in the proximity of the Lynn residence shortly before the second buy, the two telephone calls and the quick departure of Lynn after the second sale have already been mentioned. In addition, such circumstances as the movements of the Lynn vehicle in circling the area where defendant's vehicle was parked and then leaving the area and heading back in the general direction of the Lynn residence, taken in conjunction with the departure of the defendant's vehicle shortly thereafter, are all consistent with the inference that Lynn had delivered the marked currency to the defendant and that defendant was Lynn's contact or supplier. The failure on the part of the officers to view an actual contact or exchange is not fatal. Obviously, persons engaged in such activities cannot be expected to make contact where they can be readily observed. In the instant case, the timing and proximity of Lynn's and defendant's movements are enough to support a reasonable inference either that defendant was Lynn's contact or that defendant was in some way involved in the illegal sale of heroin. Moreover, the evidence discloses that all the foregoing events starting with Lynn's departure from his residence and ending with the sighting of defendant's vehicle on 17th Street prior to the search, took place between 11:40 p. m. and 11:54 p. m., a mere 14 minutes. The facts which supported the officers inference as to the involvement of the defendant were fresh, indeed.

"Thus, the Court concludes that the web of factual circumstances and the timing of the events in question establish reasonable grounds and probable cause *at the time of defendant's search.* The officers had probable cause plus exigent circumstances for the search. (*Chambers v. Maroney,* 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975) The evidence consisting of marked currency could have been easily disposed of by defendant at any time without a moment's notice. The officers would have been running a serious risk of losing the evidence if they had postponed the search. Furthermore, the information and

knowledge received from fellow officers may be relied upon. (*United States v. Ventresca*, 380 U. S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684) The Court is, therefore, of the view that the search of the defendant and the seizure of the evidence in question was lawful and that no error was committed when the motion of defendant to suppress was overruled."

After a careful consideration of the district court's memorandum decision, we are convinced that the trial court assigned sound and controlling reasons for its order overruling the defendant's motions to suppress evidence. The trial court's memorandum opinion effectively answers the questions and the arguments advanced with respect thereto raised by the defendant on this appeal.

The defendant's second point is that the trial court erred in overruling his motion for a mistrial which arose as a result of a statement made by Officer Teeselink in the presence of the jury. While on the stand Teeselink volunteered that he had received a telephone communication from Officer Ballentine to the affect that the drug seller, Lynn, was leaving his residence to meet his contact. Ballentine, himself, did not testify concerning this communication. Immediately after the statement was made by Teeselink, counsel for the defendant objected to it. The court promptly sustained the objection and instructed the jury to disregard the remark. The trial court, however, overruled the defendant's motion for a mistrial. The record discloses that the trial court sustained the objection on the basis that the evidence was hearsay. The general rule is that so long as the objecting party's rights have not been substantially affected, exposure of improper hearsay testimony to a jury does not constitute prejudicial error when the court promptly strikes the testimony and admonishes the jury to disregard it. (*State v. Carter*, 214 Kan. 533, 521 P. 2d 294.) Under the circumstances shown in the record in this case we cannot say that the defendant's rights could have been substantially affected by the denial of his motion for a mistrial. At the trial the defendant took the stand in his own defense and testified that he received a telephone call from Lynn in which Lynn advised defendant that Lynn had money for him and that he met Lynn as a result of the call. Defendant denied that the money he received from Lynn came from the sale of narcotic drugs. According to defendant, Lynn gave him the money in repayment of a loan. It was clear from the testimony that Lynn did in fact leave his residence to meet the defendant following a telephone communication. Under the circumstances

we do not see how the testimony of Officer Teeselink could possibly have prejudiced the rights of the defendant in this case.

The defendant's final point on appeal is that the state's evidence was insufficient to support the verdict. There was substantial evidence offered by the state from which the jury could return a verdict of guilty. The evidence offered by the state showed that the marked money, which had been used to purchase heroin from Mark Lynn, was found on the person of the defendant a few minutes later. This evidence considered with the rest of the evidence in the case could lead to a reasonable inference that the defendant was the heroin supplier for Mark Lynn. The time-honored rule of this court is that when the sufficiency of the evidence is challenged in a criminal case it is this court's duty to determine whether there was sufficient evidence to form for the jury a basis of a reasonable inference of guilt when viewed in the light most favorable to the state. (*State v. Austin*, 209 Kan. 4, 495 P. 2d 960; *State v. Sparks*, 217 Kan. 204, 535 P. 2d 901.) In our judgment there was ample evidence to support the verdict of guilt.

The judgment of the district court is affirmed.