No. 48,391

STATE OF KANSAS, *Appellee,* v. DALTON HOLT, *Appellant.*

(561 P. 2d 435)

Opinion filed March 5, 1977.

*Frank W. Liebert,* of Liebert and Liebert, of Coffeyville, argued the cause and was on the brief for the appellant.

*Richard A. Medley,* Assistant County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, and *Paul D. Oakleaf,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Dalton Holt, appeals from convictions by a jury on two counts charging the sale of Lysergic Acid Diethylamide (LSD) in violation of K. S. A. 1976 Supp. 65-4127b and 65-4109, and one count charging the sale of Cannabis Sativa L. (marijuana) in violation of K. S. A. 65-4105 (*d*) and K. S. A. 1976 Supp. 65-4127b (*b*) (3).

The state's evidence consisted of several trial exhibits, testimony of a forensic chemist, who identified the exhibits as LSD and mari-

juana, and the testimony of John J. Washington, a black undercover narcotic agent employed by the Kansas Bureau of Investigation (KBI), who testified that he made purchases of the described substance from the defendant. Washington testified he had previously worked as a Youth Counselor for the Federal Government and that he had also been employed by the Federal Bureau of Prisons. He became interested in the eradication of narcotics violations and, therefore, commenced his present work for the KBI. He testified that during the summer of 1974 he was using the name of John Long in his undercover work in Coffeyville. He. made the purchases from defendant which gave rise to the charges herein on July 29 and August 11, 1975, in Coffeyville. Washington had become acquainted with a young black man named Gerald Higgins, who was present when the July 29th purchase was made. Concerning this July 29th purchase, Washington testified he contacted the defendant near a Coffeyville restaurant on that date and asked him about finding some LSD. About 5:50 p. m. Washington, accompanied by Higgins, set out to find defendant and located him at the residence of one Frank L. Fullard on East Sixth Street. Washington testified he asked defendant about getting some "acid" and was told that defendant's brother, Jesse Hutchinson, had some LSD, but they would have to come back later to get it.

Washington and Higgins returned to the defendant's residence at approximately 6:25 p. m. On this occasion defendant told them his brother was at the hospital with sixty "hits" of the LSD that Washington wanted. Thereupon, defendant got into a station wagon with a young woman, later identified as his sister, Dorothea Holt, and drove to the Coffeyville Memorial Hospital. Washington and Higgins followed in Washington's automobile.

Once at the hospital parking lot, defendant parked his station wagon and got into Washington's automobile, directing him to park near a blue Chevrolet Impala automobile bearing tag number MG H 11. Defendant went to the blue Chevrolet and talked to its occupant for a short time. He then returned to Washington and reported his brother had only fifty-one hits. According to Washington a deal was made for $102.00 and he gave $110 in cash. Defendant went back to the Chevrolet Impala and returned with $8.00 in currency and a vial containing fifty-one yellow tablets. Washington took Higgins back to the bar where he met him and drove alone to his motel room, where he tagged and stored the vial and its contents in an evidence box located in the state vehicle he

was driving. On August 11, 1975, this vial was delivered to the KBI Narcotics Division Headquarters in Topeka.

Approximately two weeks after the first purchase, on August 11, 1975, Washington again made contact with defendant in the same bar in which he had previously met Higgins. Washington inquired about buying some more drugs. Defendant replied he had "4 bags of pot" and "5 hits of acid." Defendant got into the automobile with Washington and produced four bags of a "green leafy substance." Washington then drove with the defendant to his residence on East Fifth Street, where, according to Washington, the defendant waved to his sister, Dorothea, who, thereupon, brought to the car a small vial containing several tiny yellow tablets. Washington testified he gave the defendant $90.00 and left with the vial and the four bags of vegetable matter. Within twenty-five minutes Washington tagged these containers and placed them in the evidence box. On August 15, 1975, he delivered these items to the KBI laboratory in Topeka. A check on the car bearing MG H 11 license number revealed that it belonged to Jesse Hutchinson of Independence, who was identified by defendant as his brother.

Defendant took the witness stand in his own behalf and denied selling any drugs to Washington, whom he had known as John Long. He recalled seeing Washington and Gerald Higgins at Frank Fullard's house on July 29, but testified that Washington stayed in the car and had no conversation with him. Defendant testified he stayed in Fullard's house all day and until after the time of the alleged sale at the hospital. He denied having gone to the hospital that day and denied having seen his brother, Jesse Hutchinson, on that occasion. Defendant also contradicted the narcotic agent's testimony, stating that his brother drives a 1972 steel gray Impala with a black vinyl top and not a blue car.

Regarding the alleged sales on August 11 defendant recalled seeing Washington that afternoon and testified that Washington asked him if he knew where he could get some drugs. Defendant testified he replied "No" to this question and denied giving Washington any drugs. He also stated his sister did not deliver a vial of drugs to Washington at the family residence as the agent had previously testified.

Defendant called Frank L. Fullard, a neighbor of his, to corroborate his testimony that Washington stayed in the automobile and never came to Fullard's house.

Dorothea Holt was also called on defendant's behalf. She denied

riding to the hospital with her brother and also denied delivering the vial of pills to Washington on August 11.

Defendant's brother, Jesse, denied seeing the defendant on July 29, 1975, and denied giving or selling him any drugs. He said he came to Coffeyville about 7:30 p. m. on this date to take his wife to the hospital, but did not see his brother. He was at the hospital the time Washington testified the sale was made.

Defendant also called Stanley B. Hendrix who testified he was with defendant during the afternoon of August 11, 1975, when they were contacted by Washington who asked defendant if he knew anybody who had some drugs or "weed." Hendrix testified that defendant told Washington no and that no money or drugs changed hands.

Defendant raises three points on appeal. He first contends the trial court erred in overruling his motion for a continuance filed on December 8, 1975, the date set for trial. Defendant renewed his motion at the close of the state's evidence. Defendant's motion was denied in both instances. The ground asserted for a continuance was the absence of Gerald Higgins, who was alleged to be the key witness.

Under the provisions of K. S. A. 22-3401 a continuance may be granted either party for good cause shown. In *State v. Cameron & Bentley,* 216 Kan. 644, 533 P. 2d 1255, we held:

"The granting of a continuance lies within the sound discretion of the trial court and its refusal to sustain a motion for continuance will not be overturned in the absence of a clear abuse of discretion." (Syl. 3.)

Defendant did not subpoena Higgins nor did he make any other showing of diligence in attempting to secure the attendance of the alleged key witness. In *State v. Williamson,* 210 Kan. 501, 502 P. 2d 777, wherein we upheld the trial court's overruling of the defendant's motion for a continuance made under circumstances similar to that at bar, we said:

". . . When a party seeks a continuance because of the absence of a witness, he must show due diligence to procure the witness' testimony; . . ." (p. 506.)

Under the circumstances shown to exist we cannot find an abuse of discretion in the trial court's denial of the motions.

In his second point on appeal defendant contends the trial court erred in failing to sustain his motion for discharge made at the close of the state's evidence and renewed at the close of all of the evidence. Defendant argues the preponderance of the evidence at

trial was in his favor since the state's evidence consisted only of the uncorroborated testimony of one undercover agent of the Kansas Bureau of Investigation.

Judgment of acquittal on a defendant's motion is provided for by K. S. A. 22-3419. The tests to be applied by the trial court when ruling on a motion under the statute are set out in *State v. Gustin*, 212 Kan. 475, 510 P. 2d 1290, wherein we held:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." (Syl. 3.)

See, also, *State v. Thomas*, 220 Kan. 104, 551 P. 2d 873; *State v. Holloway*, 219 Kan. 245, 547 P. 2d 741; *State v. Williams & Reynolds*, 217 Kan. 400, 536 P. 2d 1395; and *State v. Rasler*, 216 Kan. 582, 533 P. 2d 1262.

Concerning the trial judge's function in ruling on a motion for judgment of acquittal we made this further observation in *State v. Gustin*, supra.

"It is not for the judge, ruling on a motion for judgment of acquittal, to assess the credibility of witnesses, weigh the evidence, or draw inferences of fact from the evidence. These are functions of the jury." (p. 479.)

While the state's case was based almost entirely on the testimony of Washington, his descriptions of the times and places at which he had met with defendant were corroborated by the defendant and several of his witnesses who were his friends, neighbors and relatives. The principal divergence between the state's and the defendant's evidence was the denial by the witnesses called by defendant of the negotiations leading up to the sales and the actual transfer of the drugs. Defendant's brother, Jesse Hutchinson, testified he was at the hospital at or about the time Washington stated the first sale was made. Washington's testimony concerning this sale is further corroborated by the fact the tag number of the automobile, from which the fifty-one tablets of LSD were obtained, was registered to defendant's brother, Jesse. The record shows that Washington had a reputable background and took meticulous notes of each contact and transfer of drugs and carefully marked and bagged the evidence following each encounter.

It is the function of the jury, not of an appellate court, to weigh

the evidence and pass upon the credibility of the witnesses; and if a verdict is secured on substantial competent evidence it will not be disturbed on appellate review. (*State v. Maier,* 214 Kan. 547, 520 P. 2d 1258; and *State v. Smith,* 209 Kan. 664, 498 P. 2d 78.) A further time-honored rule of this court governing appellate review is that where the sufficiency of the evidence is challenged in a criminal case, this court's function is limited to determining whether there was sufficient evidence to form a reasonable basis for the jury to form a reasonable inference of guilt. (*State v. Eatmon,* 220 Kan. 510, 553 P. 2d 309; and *State v. Austin,* 209 Kan. 4, 495 P. 2d 960.)

After a careful review of the evidence presented by the record herein, we find no error in the trial court's disposition of defendant's motions for judgment of acquittal. Neither do we find any reason shown to disturb the verdict of the jury.

Finally, defendant contends the trial court erred in not granting a new trial on the ground that the jury was biased or prejudiced against him as a black man since there were no black people on the jury. In his brief defendant concedes this point was not raised below, thus, appellate review is precluded. (*State v. Ambler,* 220 Kan. 560, 552 P. 2d 896; and *State v. Estes,* 216 Kan. 382, 532 P. 2d 1283.)

Nevertheless, we have examined the record in this regard and find no evidence of systematic or purposeful exclusion of black persons in the selection of the jury. Thus, even if the point had been preserved for appellate review, it would fall on its merits. (See *Roth v. State,* 218 Kan. 413, 543 P. 2d 939; *State v. Walker,* 217 Kan. 186, 535 P. 2d 924; *State v. Reed,* 214 Kan. 562, 520 P. 2d 1314; and *State v. Clift,* 202 Kan. 512, 449 P. 2d 1006, cert. den. 396 U. S. 910, 24 L. Ed. 2d 186, 90 S. Ct. 225.)

The judgment is affirmed.