No. 57,663
and
No. 57,664

STATE OF KANSAS, *Appellee*, v. MARK L. HOLLEY, *Appellant.*

(712 P.2d 1214)

Opinion filed
January 17, 1986.

*S. A. (Tim) Scimeca*, of Wichita, argued the cause and was on the brief for the appellant.

*Geary N. Gorup*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Clark V. Owens*, district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: Mark L. Holley (defendant-appellant) appeals from his conviction of aggravated robbery (K.S.A. 21-3427) and from the subsequent revocation of probation in a previous felony theft conviction. The defendant raises numerous issues on appeal, including: whether the trial court erred in refusing to admit certain photographs; whether the court erred in admitting incriminating statements of the codefendant in the absence of a limiting instruction; whether the court erred in refusing to grant the defendant's motion for severance of trials; whether the court abused its discretion by failing to grant the defendant's motion for mistrial; whether the court erred in denying the defendant's motion for a new trial based on newly discovered evidence; whether there was sufficient evidence to support the verdict; and whether the trial court erred in denying defendant's motion for acquittal. The defendant also contends that if his conviction

of aggravated robbery is reversed, then the revocation of his probation in the previous case must be reversed.

Since the defendant challenges the sufficiency of the evidence, we turn first to the facts. On June 6, 1984, at about 10:40 p.m., the Ken-Mar Amoco Station at 13th and Oliver Streets in Wichita, Sedgwick County, Kansas, was robbed. The attendant of the station, Roy Davis, said a man wearing stockings over his face and hands and a blue baseball cap forced open a sliding window in the station attendant's booth, waved a knife in Davis' face and demanded money. Davis gave him over $500 in cash along with two personal checks which had been cashed for customers earlier that evening. The robber stuffed some of the money into his pockets and then asked for a paper sack in which to put the rest of the money. The robber then fled. Davis immediately called the police.

Maurice Madison, a customer at the service station, witnessed the robbery. When the robber fled from the station, Madison followed him. The robber ran across a parking lot to the front of a nearby abandoned store. The robber dove into the passenger side window of a car, and the car immediately pulled away. Madison observed that the car was a Cadillac, approximately a 1974 to 1975 model, and that it was dark brown with a lighter top. He also noticed the license plate was red with white lettering. After losing sight of the car, Madison returned to the service station and told the police what he had seen. The police recovered the robber's baseball cap from where Madison had seen it blow off.

Madison then left the crime scene and drove to a nearby fast-food restaurant. Upon leaving the restaurant and heading home, he observed the robber's "getaway" car parked at the gas pumps of a Quik-Trip which was across the street from the Ken-Mar Amoco station. Madison immediately returned to the service station and reported his observation to the police.

Upon investigation, the police found a car which fit Madison's description (a two-toned brown Cadillac with a red and white license plate) parked at the Quik-Trip. Mark Holley, the defendant herein, was standing behind the car and had apparently just finished pumping gas into it. A man named Willie Richardson was seated in the passenger side of the car. The police arrested both men and transported them to the crime scene. Both

Davis and Madison were unable to identify either man as the robber.

After obtaining Holley's consent, the police conducted a search of the Cadillac. A paper sack was found in the trunk of the car and a nylon stocking was found on the floorboard. Some of the stolen bills and the two personal checks were found on Richardson. More of the bills were found on the passenger side floorboard of the patrol car in which Richardson had been transported from the Quik-Trip. In all, approximately $503 was found in Richardson's possession.

After being advised of and waiving his *Miranda* rights at the police station later that night, the defendant told the police that five or ten minutes before 11:00 p.m., he had been on his way to the Quik-Trip when he saw a man called "Chill Will" (a/k/a Willie Richardson) flagging him down near a Hardee's restaurant two blocks west of 13th and Oliver. Richardson had a sack in his hand and he was very insistent about putting it in the trunk. The defendant eventually gave Richardson the trunk key and watched him put the sack in. The defendant then drove to the Quik-Trip where he bought beer and gasoline. The defendant did not mention his wife's presence to the police.

However, at trial, both the defendant and his wife—Rochelle Holley—testified that Rochelle had been with the defendant when he stopped to pick up Willie Richardson while they were on their way to the Quik-Trip. They also testified that Willie had obviously been drinking and was carrying a brown paper sack which they assumed contained liquor. The defendant insisted that Richardson put the container in the trunk because he didn't want to carry an open container in his car. When they arrived at the Quik-Trip, Rochelle and the defendant went inside while Richardson remained in the car. Although Richardson had been sitting in the back seat, the defendant testified that he moved to the front while the defendant and his wife were inside the store. Rochelle testified that she had remained in the store longer than her husband and when she looked outside she saw the police arresting him. She left on foot because she had an outstanding traffic warrant and was afraid she would be arrested. The defendant and Rochelle both testified that they had been together the entire day and evening, and they denied any knowledge of, or involvement in, the robbery.

Following the joint trial of Holley and Richardson, the jury returned verdicts of guilty as to both defendants. Defendant Holley was subsequently sentenced to eighteen years to life. Also, his probation on a 1982 conviction for felony theft was revoked and sentence was reinstated (a condition of probation was that the defendant not violate the law).

The defendant first contends the trial court erred in refusing to admit photographs depicting cars similar to his Cadillac.

The State's case against defendant Holley rested primarily on the testimony of Maurice Madison, who identified the defendant's car as the getaway vehicle. The defendant maintained that the similarity between his car and the robber's getaway vehicle was purely coincidental. To support his contention, the defendant proffered photographs depicting vehicles similar to his own which might have fit Madison's description. The defendant claimed the photographed cars were all located in his neighborhood (near the Ken-Mar Amoco Station) in northeast Wichita. The photographs were apparently taken sometime between the defendant's arrest and his trial.

The trial court excluded the evidence on the ground it was irrelevant to the present case.

Relevant evidence is evidence having any tendency in reason to prove any material fact and the determination is a matter of logic and experience, not a matter of law. *State v. Abu-Isba*, 235 Kan. 851, 857, 685 P.2d 856 (1984). Subject to certain exclusionary rules, the admission of physical evidence lies within the sound discretion of the trial court, and is to be determined by the court on the basis of the relevancy of the evidence and its connection with the accused and the crime charged. *State v. Jakeway*, 221 Kan. 142, 558 P.2d 113 (1976). An abuse of discretion exists only when no reasonable man would take the view adopted by the trial court. *State v. Wilkins*, 220 Kan. 735, 556 P.2d 424 (1976).

In the case at bar, no proffer was made by the defendant connecting the cars pictured with any physical evidence of the robbery. Also, there was no showing that any of those cars were in the vicinity of the robbery on the night in question. Moreover, none of the cars pictured matched Madison's description as closely as does the defendant's car. Although the defendant proffered eleven photographs, only five different cars were pic-

tured (there were various views of each car). The first car (exhibits M-Q) had no license plate; only a partial view was shown of the next two cars (exhibits R and S); a fourth car (exhibit T) had a white and blue Kansas license plate; and the fifth car (exhibits V-W) was gold.

Photographs of the defendant's car were admitted revealing a two-toned brown Cadillac with a red and white Missouri license plate. The defendant's car clearly fit Madison's description of the getaway vehicle. Moreover, physical evidence from the robbery was found in the defendant's car.

After excluding the defendant's proffered evidence, the trial court noted that the jurors were free to use their common knowledge that many cars exist, in a town the size of Wichita, that would fit Madison's description. The defendant's attorney also argued this point to the jury in closing.

Since the defendant failed to proffer evidence connecting the cars in the photographs to the robbery, the trial court did not abuse its discretion by refusing their admission.

The defendant next contends the trial court erred by allowing Willie Richardson's confession into evidence without issuing a limiting instruction to the jury.

During the trial of this case, a police officer called by the State testified as to some incriminating statements Richardson made to him on the night of the robbery. In the patrol car on the way to the station, Richarson volunteered that "this was going to cost him [Richardson] the rest of his life." Later, while at the police station, Richardson said, "I did it and I'm going to—I did it . . . I did it and it's all my fault, and it's all my fault."

On cross-examination, defendant Holley's attorney asked the officer whether Richardson had ever indicated that defendant Holley was involved in the robbery. The officer said Richardson had made no *direct* statements implicating Holley. Defendant Holley's attorney then asked whether Richardson had made *any* statements whatsoever implicating Holley, to which the officer replied, "he stated he was not going down by himself." The defense then queried, "You infer that that's a statement that implicates Mr. Holley?" The officer answered, "It implicates another person."

The defendant now argues that the trial court erred in admitting the officer's testimony as to Richardson's incriminating

statements without specifically instructing the jury that it should consider the confession only as to the determination of Richardson's guilt. However, the defendant did not object to the admission of his testimony, nor did he request a limiting instruction.

At the close of all the evidence, the court instructed the jury as follows:

"Both defendants in this case are being tried at the same time for convenience and economy. While it may be unnecessary to state, the jury is instructed to consider the evidence against each defendant separately and to give no weight to any evidence affecting one defendant when considering the case of the other defendant."

Defendant Holley did not object to this instruction nor did he request any additional instruction.

The rule is well established in this state that a party may not assign as error the giving or failure to give an instruction unless he objects to the instruction stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the trial court's failure to give the instruction was clearly erroneous. *State v. Peck*, 237 Kan. 756, 764, 703 P.2d 781 (1985).

Defendant Holley claims the trial court's failure to give the instruction *sua sponte* was clearly erroneous in light of this court's holding in *State v. Sullivan & Sullivan*, 224 Kan. 110, 578 P.2d 1108 (1978). In *Sullivan*, the trial court had refused to give the requested limiting instruction prior to receiving the codefendant's confession into evidence. The confession directly implicated the defendant. This court reversed the defendant's conviction, stating, "It would appear that the admission of the statement of the [codefendant] had an adverse effect upon [the defendant's] theory of defense and when coupled with the refusal of the trial court to give a limiting instruction we cannot say the error is harmless." 224 Kan. at 118.

The facts in the present case clearly differ from those in *Sullivan*. First, a limiting instruction *was* given even though it did not refer directly to Richardson's confession. Second, the defendant did not object to the officer's testimony nor did he request a limiting instruction.

Finally, Richardson's statement, "I'm not going down by myself" did not incriminate defendant Holley. Since the eyewitness—Madison—had already testified that there was a getaway car, it was clearly established that Richardson had not been alone in perpetrating the robbery. The matter to be determined by the

jury was who the driver was—that is, whether it was defendant Holley. Since Richardson did not mention any names, his statement did not implicate Holley. Assuming this court determined Richardson's statement was prejudicial to Holley, it could not find reversible error because the statement was elicited on cross-examination by defendant Holley's attorney. The defendant may not invite error and then complain of that error on appeal. *State v. Falke*, 237 Kan. 668, 682, 703 P.2d 1362 (1985).

The trial court's failure to give a limiting instruction *sua sponte* was not clearly erroneous. The statements did not incriminate the defendant Holley. Furthermore, the fact that Richardson committed the robbery did not in any way affect Holley's defense that he was simply giving Richardson a ride and knew nothing of the money. Therefore, the statements were not prejudicial to Holley and the court did not err by admitting them without a specific limiting instruction.

The defendant contends the trial court erred in refusing to grant his motion for a separate trial from that of his codefendant, Willie Richardson.

The statute governing joinder of two or more defendants for trial is K.S.A. 22-3202(3). It permits joinder if the defendants are "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes." Under K.S.A. 22-3204, when two or more defendants are jointly charged with crime, the court *may* order a separate trial when requested by a defendant or the prosecuting attorney. This court has repeatedly stated that the granting of a separate trial lies within the sound discretion of the trial court, and, absent an abuse of the exercise of the power of discretion, its action will not be set aside on appeal. *State v. Falke*, 237 Kan. at 674; *State v. Myrick & Nelms*, 228 Kan. 406, 416, 616 P.2d 1066 (1980).

Generally, an order for the separate trial of a defendant jointly charged with a codefendant must be based upon some ground sufficient to establish prejudice. The usual grounds for which a severance will be granted were stated in *State v. Martin*, 234 Kan. 548, 549, 673 P.2d 104 (1983), as follows:

" '(1) [T]hat the defendants have antagonistic defenses; (2) that important evidence in favor of one of the defendants which would be admissible on a separate trial would not be allowed on a joint trial; (3) that evidence incompetent as to one defendant and introducible against another would work prejudicially to the

former with the jury; (4) that a confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) that one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants.' "

In this case, the defendant claims two of these grounds were present in his case. First, he argues the jury was prejudiced against him because of the mass of evidence which was introducible against Richardson but incompetent as to him. Second, he argues the jury was prejudiced against him because of the admission of Richardson's confession.

These grounds for severance which the defendant asserts on appeal were not asserted before the trial court. Although the defendant did move for a separate trial, the basis of his motion below was his belief that defendant Richardson would testify that he "found" the stolen money. The defendant felt such testimony would be so inherently unbelievable that the jury would discount Richardson's testimony that defendant Holley merely gave him a ride and had no knowledge of the money Richardson carried. The defendant did not argue that he would be prejudiced by the abundant evidence against Richardson or by the introduction of Richardson's confession. The defendant cannot raise points on appeal which were not presented to the trial court. *State v. Falke,* 237 Kan. at 676.

Even if the defendant had raised these points below, we could not find the trial court abused its discretion by failing to grant separate trials. Richardson did not testify at trial and presented no defense of having simply "found" the money. A police officer was allowed to testify as to Richardson's confession, but, as was previously noted, this was not prejudicial to defendant Holley in light of his defense. Also, Richardson's confession did not implicate Holley, and most significantly Holley did not contemporaneously object to the introduction of this testimony.

While it is true that there was a greater amount of evidence against Richardson than against Holley, a claim of disparate evidence justifies severance in only the most extreme cases. *United State v. Bolts,* 558 F.2d 316 (5th Cir. 1977). A defendant is not entitled to severance simply because separate trials would provide him with a better chance of acquittal. Before a trial court may grant severance on this ground it must be shown that the prejudice which would flow from a joint trial would be beyond

the curative power of a cautionary instruction, thereby denying the defendant a fair trial. *United States v. Alpern*, 564 F.2d 755 (7th Cir. 1977). In this case, an adequate cautionary instruction was given. We can assume it was within the jury's capacity to follow this instruction and to assess each defendant's guilt or innocence solely on the basis of the evidence against him. *State v. Pink*, 236 Kan. 715, 726, 696 P.2d 358 (1985).

We find no error in the trial court's refusal to sever Holley's trial.

The defendant contends the trial court abused its discretion in denying his motion for a mistrial based on juror misconduct.

The jury initially returned a verdict of "guilty" as to both defendants. When the jury was subsequently polled, one of the jurors answered "no" when asked whether the verdict read was his verdict. Both defendants moved for a mistrial. The trial court took the motion under advisement and sent the jury back for further deliberations. A short time later, the jury again returned verdicts of guilty. During the polling of the jury, the juror who had earlier answered "no" said he had misunderstood the question he had been asked. The second poll revealed the verdicts were unanimous. Accordingly, the trial court denied the motion for mistrial.

Declaration of a mistrial under K.S.A. 22-3423 is a matter entrusted to the trial court's discretion. *State v. Rider, Edens & Lemons*, 229 Kan. 394, 407, 625 P.2d 425 (1981). There was absolutely no showing of juror misconduct in this case. The trial court did not abuse its discretion by denying the motion for a mistrial.

The defendant contends the trial court erred in denying his motion for a new trial under K.S.A. 22-3501 based upon newly discovered evidence. The new evidence is found in an affidavit submitted to the trial court by the defendant in which he states that, after his conviction, Willie Richardson told him the name of the actual getaway driver was "Fast Eddie" and that he drove a brown and gold 1974 Oldsmobile 98 with an Arizona license plate (red and white). Attached to the defendant's motion for new trial were two unsigned, handwritten letters which were purportedly from Richardson and which absolved defendant Holley of any knowing involvement in the robbery. The defendant did not call Richardson to testify in his motion for new trial. The trial

court denied the motion, finding defendant Holley's claims as to what Richardson had told him were inherently unreliable. The trial court also found the statements in the letters which were purportedly from Richardson had been directly contradicted by statements Richardson had made to his pre-sentence investigator.

K.S.A. 22-3501(1) permits a district court to order a new trial on the ground of newly discovered evidence. The rules governing these motions were set forth in *State v. Johnson*, 222 Kan. 465, 471, 565 P.2d 993 (1977), as follows:

"The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin*, 212 Kan. 158, 510 P.2d 123, *cert. den.* 414 U.S. 848, 38 L.Ed.2d 95, 94 S.Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale*, 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson*, 211 Kan. 148, 505 P.2d 691; *State v. Larkin*, [212 Kan. 158].) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora*, 213 Kan. 184, 515 P.2d 1086, *State v. Arney*, 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell*, 207 Kan. 152, 483 P.2d 495; *State v. Anderson*, [211 Kan. 148].)"

These rules have been often reiterated by this court, most recently in *State v. Hobson*, 237 Kan. 64, 697 P.2d 1274 (1985).

The trial court found the evidence in this case was not credible. We cannot say the trial court abused the exercise of its power of discretion in this case.

The defendant argues the verdict was not supported by the evidence.

In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Peck*, 237 Kan. at 764; *State v. Pink*, 236 Kan. at 729.

In support of his contention that the verdict is contrary to the evidence, the defendant attempts to discredit Maurice Madison's

identification of his car, pointing to inconsistencies in his various descriptions. The defendant also emphasizes the failure of anyone to identify Holley; the lack of logic in a robber parking his car across the street from the scene while the police are investigating; the lack of direct evidence of Holley's involvement in the robbery; the pretrial, post-arrest statement of Richardson that "it's all my fault"; the failure of the police to find any stolen property on Holley; and the fact that Holley chose to testify at trial.

The defendant is essentially asking this court to reweigh the evidence, which we will not do. It is the jury's function, and not an appellate court's, to weigh the evidence and pass upon the credibility of witnesses. *State v. Pink*, 236 Kan. at 729; *State v. Holt*, 221 Kan. 696, 561 P.2d 435 (1977). An appellate court will not substitute its evaluation of the evidence for that of the jury.

In this case, Maurice Madison witnessed the robber diving into a getaway car and was able to describe the car. Madison later spotted the same car across the street from the service station. Coincidentally, the passenger in the car—Richardson—was found carrying the money which had been stolen from the service station. Also, a stocking and paper sack were found in the car—the attendant testified that the robber wore a stocking over his face and that he asked for a paper sack to put the cash in.

The jury apparently believed Madison's testimony. Since defendant Holley owned the car, and since—by his own testimony—he had been the only one to drive it that day, the jury concluded he was the driver of the getaway car. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. White & Stewart*, 225 Kan. 87, Syl. ¶ 14, 587 P.2d 1259 (1978).

After considering the evidence in the light most favorable to the prosecution, we find there was sufficient evidence to support the verdict.

The defendant also contends the trial court erred by denying his motion for a judgment of acquittal.

In passing on a motion for judgment of acquittal, a trial judge must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond

a reasonable doubt. *State v. Fosnight*, 235 Kan. 52, 53, 679 P.2d 174 (1984); *State v. Mack*, 228 Kan. 83, 89, 612 P.2d 158 (1980). For the reasons stated in the previous issue, we find the trial court did not err by denying the defendant's motion.

Finally, the defendant contends that if this court reverses his conviction for aggravated robbery, the revocation of probation on his earlier conviction must be reversed, and probation reinstated. Since we affirm the defendant's conviction, this issue is moot.

The judgment of the lower court is affirmed.