NOT DESIGNATED FOR PUBLICATION

No. 114,856

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT EARL HUNTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; VAN Z. HAMPTON, judge. Opinion filed December 9, 2016. Affirmed.

*Terry J. Malone*, of Williams-Malone P.A., of Dodge City, for appellant.

*Natalie K. Randall*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

*Per Curiam*: Claiming there is insufficient evidence to sustain his convictions, Robert Earl Hunter asks us to overturn his convictions for rape of a child under 14 and two counts of indecent liberties with a child under 14. Hunter received three concurrent life sentences for these crimes and contends that:

**First**, there was insufficient evidence;
**second**, the aggravated habitual sexual offender statute is unconstitutional; and

1

**third**, the district court erroneously admitted a video recording of a police interview with the victim.

Having carefully reviewed the record, we find no merit in this appeal. We affirm his convictions.

J.C., the victim, spent the summer of 2013 living in Bucklin with several family members including Hunter. J.C. was 8 years old. Hunter was 63 years old. J.C. moved to Bucklin shortly after the prior school year finished. At some point during the summer, Hunter began sexually fondling J.C. She remembered three distinct events where Hunter acted inappropriately.

The first inappropriate action occurred when J.C. and Hunter were outside sitting on a bench in the backyard. J.C. asked to sit in Hunter's lap. After J.C. sat in his lap, Hunter put his hands down her pants. Hunter entered J.C.'s pants in the back and moved his hand toward her vagina. Hunter touched the outside of J.C.'s vagina and penetrated her vagina with his hand. J.C. told Hunter to stop, and she ran away from Hunter.

The second inappropriate action occurred while Hunter was filling up a swimming pool. Hunter asked J.C. if she wanted to touch his "cocka"—the word J.C. used for penis—with her hand. J.C. heard Hunter unzip his pants. It is unclear whether J.C. saw Hunter's penis. At one time J.C. stated she did not see his penis, but at another she stated his penis was sticking straight out of his pants.

The third inappropriate action by Hunter occurred after Hunter woke J.C. up while the rest of the household was asleep. Hunter made her breakfast and, after eating, they went back to Hunter's bedroom to watch television. After they were inside the room, Hunter began kissing J.C. Hunter kissed her on the lips, neck, and between her breasts. Hunter asked if J.C. liked what he was doing, and she told him to quit. J.C. heard Hunter

2

unzip his pants. Then, J.C.'s brother entered the room and asked to go swimming. Hunter zipped up his pants.

After the summer had ended, J.C. returned to live with her mother in Wichita, Kansas. J.C. had been acting up after she returned home. While J.C. and her mother were having dinner, J.C. told her mother that Hunter had touched her. J.C.'s mother contacted the Wichita sexual assault center. J.C. was taken to the Wichita police exploited and missing child unit to be interviewed. J.C. told the police the reason she finally blurted out that Hunter had hurt her was that "I had it too long."

The State charged Hunter with one count of rape of a child under 14 under K.S.A. 2011 Supp. 21-5503(a)(3) and two counts of indecent liberties with a child under the age of 14 under K.S.A. 2011 Supp. 21-5506(b)(3)(A)&(B). The State amended the complaint to charge Hunter as an habitual offender. Hunter was considered an habitual offender due to a prior conviction for aggravated incest—perpetrated against his 10-year-old and 12-year-old daughters. The State introduced evidence of the prior crimes at trial.

At trial, J.C. was confused about how often the touching happened and provided inconsistent testimony. At one point she stated the touching happened every other day, and at another point she stated the touching happened three times a day. Describing the touching as happening every other day was the best way J.C. could explain how often it happened. The State introduced a video recording of Detective David Wertz interviewing J.C. about what had happened to her. The recording was admitted without objection.

The jury convicted Hunter on all three counts. Hunter sought a downward departure, arguing the habitual offender statute violated the 8th Amendment prohibition of cruel and unusual punishment. The court denied this motion and sentenced Hunter to three concurrent life sentences.

*There was sufficient evidence.*

Hunter raises two arguments about insufficient evidence:

**First**, J.C. told different stories to different people which shows a jury could not believe her story beyond a reasonable doubt; and
**second**, there is no evidence of his intent for any of the crimes.

When reviewing sufficiency of the evidence this court looks at the evidence in the light most favorable to the prosecution and upholds the conviction if the evidence convinces this court that a jury could find the defendant guilty beyond a reasonable doubt. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). When looking at the evidence the court will not reweigh witness credibility. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

Hunter argues that because J.C. told different stories, no jury could convict him beyond a reasonable doubt. He is actually asking this court to reweigh the credibility of J.C.'s testimony. This court is not in a position to reweigh the credibility, but rather accepts the jury's determination of credibility. *State v. Holt*, 221 Kan. 696, 700-01, 561 P.2d 435 (1977). The fact J.C. was not able to pinpoint exactly when Hunter violated her does not make her testimony so lacking in credibility to overturn the convictions. *State v. Rowray*, 18 Kan. App. 2d 772, 780, 860 P.2d 40 (1993).

Hunter's second argument concerns the indecent liberties charges. He claims the State presented no evidence of his specific intent to excite sexual pleasure of himself or J.C., or his general intent to rape. Intent can be proven through circumstantial evidence alone. See *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014). However, inferences drawn from circumstantial evidence must be based upon proven facts. See *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009).

For the indecent liberties charges, the State proved Hunter kissed J.C. on her lips, neck, and between her breasts and at a different time asked J.C. to hold his penis in her hand. For the rape charge, Hunter placed his hand in J.C.'s underwear and penetrated her vagina. These actions are sexual in nature, and the jury could properly infer Hunter's intent from his proven actions alone. See *State v. Clark*, 298 Kan. 843, 850, 317 P.3d 776 (2014). Additionally, the State showed Hunter had previously committed sexual crimes against his daughters. The Kansas Legislature, through K.S.A. 2015 Supp. 60-455(d), permits the use of previous convictions of sexual crimes to be used as propensity evidence in a prosecution. See, *e.g.*, *State v. Bowen*, 299 Kan. 339, 349-50, 323 P.3d 853 (2014). The jury could infer that because Hunter had previously assaulted similar victims, he had the requisite intent to excite his or J.C.'s sexual pleasure and his intent to rape.

Because these inferences are based upon proven facts, the jury could have found Hunter had the requisite intent for the crimes he committed. See *Richardson*, 289 Kan. at 127. Thus, there is sufficient evidence for the conviction.

*Supreme Court precedent controls the issue concerning the Habitual Sexual Offender Statute.*

Hunter challenges the aggravated habitual sexual offender statute as unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and the 8th Amendment's prohibition against cruel and unusual punishment. Hunter recognizes the Kansas Supreme Court has determined this statute is constitutional but wishes to preserve these arguments for federal review. This court is duty bound to follow Kansas Supreme Court precedent, unless there is an indication the Supreme Court is changing its position. *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011).

5

*We will not consider Hunter's issue about the videotape.*

Finally, Hunter challenges whether it was proper to admit the recorded video of the police's interview with J.C. Hunter made no contemporaneous objection to the admission of this video at trial. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). A trial objection needs only to be as specific as necessary for the trial court to "consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error." *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009). A lack of a contemporaneous objection can be overcome if the purpose of the rule has been satisfied. See *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013).

In *State v. Barber*, 302 Kan. 367, 373-74, 353 P.3d 1108 (2015), a lack of a specific, timely objection was overcome by pretrial motions regarding the admissibility of challenged evidence. Barber raised an objection at trial referring to the pretrial proceedings, which "signaled to the trial court . . . that he was not raising a different legal argument from those already considered by the trial court." 302 Kan. at 373.

Here, Hunter did not raise a specific and timely objection at trial and filed no pretrial motion regarding the admissibility of the recording. The district court was not given the opportunity to consider whether the recording should have been admitted. Therefore, the purpose of the contemporaneous objection rule is not satisfied and K.S.A. 60-404 prevents this court from analyzing Hunter's challenge to this evidence. See *Richmond*, 289 Kan. at 429.

Affirmed.