No. 78,444

STATE OF KANSAS, *Appellee*, v. ALFRED JEROME WILLIAMS, *Appellant.*

(988 P.2d 722)

Opinion filed September 24, 1999.

*Bradley P. Sylvester,* special appellate defender, of Wichita, argued the cause and was on the brief for appellant.

*Steven J. Obermeier,* assistant district attorney, argued the cause, and *Paul J. Morrison,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals convictions of two counts of first-degree premeditated murder and four counts of attempted first-degree murder, claiming the second trial constituted double jeopardy. Defendant also contends the trial court erred in denying his motions for new trial at the second trial, admitting his out-of-court statements, allowing the State's complaint to be amended, failing to instruct on aggravated battery as a lesser offense of attempted premeditated first-degree murder, and insufficient evidence to sustain the convictions.

The events relevant to the crimes of which Alfred Jerome Williams was convicted began at the Shawnee Mission North High School (SMNHS) homecoming football game against Olathe North High School (ONHS) on Friday, September 22, 1995, and ended on Sunday evening, September 24, 1995.

During the game, a fight broke out between ONHS students and students from SMNHS. Williams participated in the fight until teachers and administrators intervened. After the game, another student disturbance broke out. Threats, taunts, and profanities

were exchanged between the students from the two schools. Teachers, administrators, and security officers again attempted to disperse the students. Eric Hulse, a school resource officer for SMNHS, testified that Williams was visibly angry, yelling and cursing. He testified that Williams and another student began hitting Noah Correa, until Correa was on the ground. Correa eventually escaped by running away. The Olathe police department arrived and dispersed the students.

After leaving the game, Williams and several friends met at a donut shop in Olathe. They were joined by another group of young people, and an argument began. Williams and others forced Jibri Burnett, a student from ONHS, across the street where they beat and kicked him.

In the late evening of the next day, Saturday, September 23, 1995, Williams and several friends met at Williams' apartment complex to discuss an incident where an ONHS student had chased one of their friends. Williams showed James Whitaker a .22 caliber semiautomatic handgun. Williams told the group to meet back at his apartment complex on Sunday afternoon.

On Sunday, September 24, 1995, a large group met at Williams' apartment complex. There were several weapons in the crowd. Williams was "fidgeting" with his .22 semiautomatic, putting the clip in and taking it back out. After about an hour, the group departed the apartment complex in five cars.

The car in which Williams was riding cut off and almost hit a car driven by Darren Dillard. Dillard followed Williams' car to the donut shop parking lot. Williams got out of the car and asked if Dillard was from ONHS. Dillard responded that he was not. Williams asked Dillard if he knew the whereabouts of Jibri, and Dillard said that he did not know Jibri. Williams told Dillard that if he saw people from ONHS, he should tell them to meet "him and his boys" at ONHS.

Dillard went to his cousin's house and related what he had been told by Williams. Dillard's cousin, Arland Bruce, and Dillard went to ONHS where they encountered Williams and his companions. Williams told them that "somebody messed with his boys at the [game] Friday night, and they came to take care of business." Wil-

liams told Dillard to inform people from ONHS to meet him at 6 p.m. Williams told Bruce, "We're looking for some punk-ass nigger named Jibri." Bruce left ONHS and went to the home of Jibri's cousin. Bruce told someone at the house to inform Jibri that someone was looking for him.

Williams and James Whitaker rode to ONHS on Sunday night in Chris Campos' car. En route, Williams pulled the back seat down and put his gun, wrapped in a blue bandanna, in the trunk of the car.

At ONHS, Williams and his friends were confronted by a group of people from ONHS. Williams told Whitaker to get his gun from the trunk of the car. Whitaker retrieved the gun and gave it to Williams. Williams put the gun in his front pocket.

Shortly after, other cars arrived in the area. Approximately 20 people got out of the cars and began running toward Williams' group. Williams told his companions that it was time to leave. Williams and Whitaker got back into the car with Campos. Williams was in the back seat on the driver's side of the car.

As Campos began to drive away from the scene, Williams told him to turn around and go back. Campos made a U-turn and returned to the scene. Whitaker looked into the back seat and saw that Williams had rolled down the back window and was pointing his gun out the window.

Williams then told Campos to stop the car. Williams fired into the crowd six or seven times. After the discharges, Whitaker heard the gun click. Williams said, "Damn, out of bullets."

When the shots were fired, the crowd began to quickly disperse. An individual left the crowd, ran to Campos' car, and broke out the back driver's side window. Campos sped up, and his car hit another car. Campos stopped; Jeff Dunn, a friend, ran to the car and entered through the back passenger side door.

Dunn remarked that Williams could have shot him when Williams fired into the crowd. Williams responded, "I knew where you were. This is how much love I got for you." Williams informed his companions that he had shot someone in the leg and someone in the arm.

The men drove back to Williams' apartment where they met Eric Gonzales. Williams, Dunn, Reggie Johnson, and Eric Cox got into Gonzales' car. Williams, who was holding the gun on his lap, told Cox, who had not been at ONHS, "We busted caps on some fools." Williams said that as he shot the gun at ONHS, he observed people holding their stomachs and dropping to the ground.

Williams asked Cox to hold his gun until Monday. Cox agreed. When they arrived at Cox's house, Williams gave him the gun. As Cox walked by the trash dumpster at his apartment complex, he threw the gun, wrapped in blue bandannas, in the dumpster.

Two people were killed and four people were injured at the ONHS shooting. Williams was charged with two counts of premeditated first-degree murder, four counts of attempted premeditated first-degree murder, and one count of unlawful possession of a firearm. Prior to trial, Williams pled guilty to unlawful possession of a firearm.

Williams' trial began on May 10, 1996. After two weeks of evidence, with Williams' consent the judge ordered a mistrial after it was discovered that a defense witness had given perjured testimony.

Williams' second trial commenced on August 12, 1996. On August 29, 1996, the jury found Williams guilty of two counts of premeditated first-degree murder and four counts of attempted premeditated first-degree murder. Williams was sentenced to two hard 25 life sentences on the murder convictions, four 92-month imprisonment sentences on the attempted murder convictions, and one 9-month imprisonment sentence on the criminal possession of a firearm conviction. Williams appeals the convictions.

## DOUBLE JEOPARDY

Williams' first trial resulted in a mistrial because a defense witness provided perjured testimony. Williams, who agreed to the granting of the mistrial, does not contend that the perjured testimony barred retrial. What Williams asserts is that the trial court abused its discretion in denying defense motions for a mistrial during the first trial when (1) Eric Hulse, a resource officer at SMNHS, testified regarding an unrelated and prejudicial confron-

tation involving Williams and others at the homecoming football game; (2) the State failed to turn police field notes over to the defense prior to trial; (3) a State's witness, who had previously stated that the shots were fired from the driver's side front window, testified during the trial that the shots were fired from the rear driver's side window of the car in which Williams was riding; and (4) one juror overheard threats made to prosecution witnesses and a second juror was observed crossing her fingers when taking the oath. Williams argues that the judge's failure to declare a mistrial for the reasons he raises denied him the constitutional protection against double jeopardy.

The State argues that (1) whether the trial court should have granted the mistrial on Williams' claim is too speculative, and (2) Williams cites no authority to support his argument that trial errors in the first trial are reviewable upon conviction in a second trial.

Under K.S.A. 22-3602(a), the direct appeal of the judgment in the second trial was the first opportunity for Williams to appeal the judge's denial of his request for a mistrial based upon prosecutorial misconduct in the first trial. Here, judgment did not occur until after Williams' second trial. Therefore, it was not until after judgment in the second trial that Williams had an opportunity to appeal, and we will consider the issue.

The Double Jeopardy Clause of the United States Constitution protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. The language of the Fifth Amendment to the United States Constitution guarantees no greater protection to an accused than does § 10 of the Kansas Constitution Bill of Rights. Therefore, the underlying protection contained in the Double Jeopardy Clause of the United States Constitution is contained in § 10 of the Kansas Constitution Bill of Rights. *State v. Cady*, 254 Kan. 393, Syl. ¶¶ 1, 2, 867 P.2d 270 (1994).

In order to implement and define the constitutional guarantees against double jeopardy, the Kansas Legislature enacted K.S.A. 21-3107 and K.S.A. 21-3108. K.S.A. 21-3107 defines the right of the State to charge more than one offense based on the same act and

states that a defendant may be convicted of either the crime charged or an included offense not specifically charged. It formulates the limitations upon unfair multiplicity of convictions and prosecutions. K.S.A. 21-3108 covers the complex problems of former jeopardy. 254 Kan. 393, Syl. ¶ 3.

The constitutional interest protected by *Oregon v. Kennedy*, 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982), is the right of a defendant to freely choose whether he or she should request a mistrial. Where the prosecutor seeks to force the defendant into a choice, the choice is not freely made and the prosecution has subverted the defendant's rights protected by the Double Jeopardy Clause. The exception applies and double jeopardy precludes the State from trying the defendant again on the same charges. *State v. McClanahan*, 259 Kan. 86, Syl. ¶ 3, 910 P.2d 193 (1996).

Prosecutorial misconduct that precludes further prosecution requires intent by the prosecutor to provoke the defendant into moving for a mistrial. Intentional prosecutorial conduct motivated by a desire to obtain a conviction and not by a desire to provoke the defendant into moving for a mistrial may be grounds for a mistrial but it does not preclude retrial of the case. *State v. Muck*, 262 Kan. 459, 467, 939 P.2d 896 (1997). Therefore, it is not necessary to determine whether the alleged errors in the first trial were actual errors unless the alleged errors, if found to be actual errors, were made to provoke the defendant into moving for a mistrial.

Although Williams contends that the alleged errors prejudiced his defense, our review of the record does not indicate that the judge erred or suggest that the alleged prosecutorial errors occurred or, if they did occur, that they were motivated by the prosecutor's design to provoke the defendant into moving for a mistrial. Williams' retrial did not violate constitutional double jeopardy protections.

## DENIAL OF A SECOND MISTRIAL

Williams also contends that the trial court erred in failing to grant a mistrial at the second trial when the defense was denied the opportunity to cross-examine a State's witness regarding the

nature of the offense for which the witness received a diversion sentence.

Terminating a trial and declaring a mistrial is largely within the discretion of the trial court. A clear showing of abuse of discretion must be made before the decision of a trial court will be set aside on appeal. *State v. Humphrey*, 267 Kan. 45, Syl. ¶ 5, 978 P.2d 264 (1999). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998).

At the second trial, a State's witness was on diversion for indecent liberties with a child. The trial court refused to allow the defense to ask the nature of the crime charged but did permit the defense attorney to question the witness as to the sentence the witness could receive if his diversion were withdrawn. The rationale of the court's limitation on cross-examination was that indecent liberties is not a crime of dishonesty that reflects on the truthfulness of the witness; therefore, it is not admissible under the rules of evidence. K.S.A. 60-421 (evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility). The judge determined that the jury would be informed of the possible penalty because the witness' benefit could possibly affect the witness' testimony. The defense attorney stated that he "accept[ed] the court's offer."

Issues not raised before the trial court cannot be raised on appeal. *Ripley v. Tolbert*, 260 Kan. 491, 513, 921 P.2d 1210 (1996). Williams' issue regarding the constraints on the cross-examination of the witness has not been preserved for appeal. Therefore, it will not be addressed.

Williams next contends that the trial court erred in denying his motion for mistrial when a State's witness, James Whitaker, changed his testimony. During the second trial Whitaker admitted on the witness stand that he had not been completely truthful in his prior statements. He stated that in previous proceedings, he attempted to protect Williams and himself by stating that Williams

returned to the fight at ONHS to rescue a friend (Dunn) who was being beaten by the crowd.

Although Williams did not testify, his defense in both trials was based on his and Whitaker's statements to officers that Williams returned to the fight to rescue a friend. When Whitaker recanted the prior statements, Williams' defense strategy suffered. Williams moved for a mistrial, arguing that prior to Whitaker's being called as a State's witness, the State was well aware that Whitaker would recant the previous statements, and it was, therefore, required to disclose this fact to the defense.

The State argued to the trial court that Whitaker was an unreliable witness, and it was unsure what Whitaker would say on the stand. The State asserted it had merely encouraged Whitaker to tell the truth and if he told the truth, he had nothing to worry about. The trial judge found that the fault lay with the witness rather than the State and denied Williams' motion for mistrial.

Williams argues to this court that the State's promise to Whitaker was an offer to forego prosecution for Whitaker's false statement in the first trial. Williams asserts that the State's offer not to prosecute the witness for prior false testimony was impeachment evidence that the State was required to disclose prior to trial, and claims that the State's failure to disclose its offer was prosecutorial misconduct designed to provoke him into moving for a mistrial. Williams concludes that the State's failure to disclose its offer to the witness bars further prosecution.

For authority as to this claim, Williams relies on *United States v. Bagley*, 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985), and *State v. Lewis*, 238 Kan. 94, 708 P.2d 196 (1985). In *Bagley*, the State failed to disclose to the defense that the State had offered a reward for information about the crime furnished to the government. Two government witnesses who testified could possibly have received a reward if they testified to the satisfaction of the government. The government prosecutors represented to the defense counsel that no inducements had been made to the witnesses. The Court observed that suppression of impeachment evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. It concluded that a defendant is deprived of a

fair trial only if the evidence suppressed was material and suppression undermines confidence in the outcome of the trial. 473 U.S. at 678. The *Bagley* Court held that the government's inducement to its witnesses was impeachment evidence that should have been disclosed by the government.

In *Lewis*, the prosecutor failed to disclose to the defense counsel that he intended to introduce into evidence a report which corrected a previous erroneous report. The prior report stated that a knife, purported by the State to be the murder weapon, had tested negative for blood. In his opening statement to the jury, the defense counsel built his case around the fact that the State's expert would testify there was no blood found on the knife. After the State had introduced the knife into evidence, the State called its expert witness. The State was aware that its expert witness would testify that her examination had disclosed the presence of blood on the knife. Neither the judge nor defense counsel had been informed by the State that its expert witness would change her testimony. The defendant moved for a mistrial. The trial judge excluded the expert's testimony and instructed the jury to disregard that testimony. The defendant appealed, claiming that justice necessitated a new trial. The *Lewis* court observed that prosecutors have a statutory duty to disclose results of scientific tests made in connection with the case. It found, under the circumstances, the prosecutor's failure to disclose the results necessitated a new trial. 238 Kan. at 98.

Here, the State's promise not to prosecute the witness for past statements if the witness would testify truthfully is not impeachment evidence. Unlike the government's promise in *Bagley* to reward a witness, the promise not to prosecute for a prior false statement was not as an inducement or incentive to testify falsely at trial. In addition, defense counsel had sufficient opportunity on cross-examination to challenge the witness' credibility. Even though the defense strategy was impaired by the witness' recantation, under the circumstances the State's failure to disclose that the witness would recant his prior statement did not undermine the confidence in the outcome of the trial. The trial court did not err in denying Williams' motion for a mistrial on this basis.

## ADMITTING DEFENDANT'S STATEMENTS

Williams contends that the trial court erred in admitting into evidence prior statements he made to Eric Cox on the Sunday night of the shooting that "we had just busted caps on some fools," and statements made to police after his arrest. The trial court conducted a hearing prior to trial as to the admissibility of the statements.

### Statements to Cox

Williams does not state his reasons for contending that his statement to Cox that "we had just busted caps on some fools" was erroneously admitted. He merely sets forth the statement and points out that he objected at trial. The objection stated at trial was hearsay. The trial court overruled the defense attorney's objection as an "admission against interest."

Eric Cox's testimony concerning his conversation with Williams was hearsay evidence. The question, therefore, is whether the conversation is admissible as an exception to the hearsay rule. The testimony concerned a prior admission or statement made by the defendant, a party to the action. The exception is found in K.S.A. 60-460(g) as an admission by a party. See *State v. Korbel*, 231 Kan. 657, 660, 647 P.2d 1301 (1982). The trial court did not err in admitting the testimony as an exception to the hearsay exclusion.

### Statements to Police

Williams was arrested at his residence in the early morning hours of September 25, 1995. Williams was sleeping when his mother allowed officers to enter the apartment and go to Williams' room. Officers handcuffed and arrested Williams immediately upon rousing him from sleep. Detective Roger T. LaRue advised Williams of his *Miranda* rights before taking Williams from his home. Williams asked LaRue what the charges were, and LaRue responded that Williams was charged with two counts of murder. Williams said, "Bull."

At the police station later that morning, LaRue conducted an interview of Williams. Prior to the interview, LaRue reminded Williams that he had been advised of his rights and asked him if he remembered being advised. LaRue then asked Williams if he

wanted to talk. The officers did not ask Williams to sign a written waiver of *Miranda* rights. Williams stated that he would talk to the officers with or without an attorney. Williams admitted to being at ONHS on Sunday night, but he denied having a gun.

Detective Joe Langer interviewed Williams on Tuesday, September 26, 1995. Langer provided Williams with a written waiver of rights, and Langer read the form to Williams. Williams indicated that he understood his rights and was willing to answer any questions. Williams signed the written waiver.

During the interview, Williams told Detective Langer that when he returned to ONHS to rescue a friend from a beating, he had shot a gun above the crowd. Langer testified that when Williams stated that he shot the gun over the crowd, he gestured by holding his arm out at a 90-degree angle, straight out from his body.

At the suppression hearing to determine the admissibility of Williams' statements to the police after his arrest, the court reviewed the tape recordings of the statements. The court noted that in responding to questions, Williams did not appear to be intimidated, frightened, or reluctant to answer the detectives' questions. The court found that because Williams had been sufficiently advised of his rights and had not asserted those rights, his postarrest statements were admissible. At trial Detectives Langer and LaRue testified what Williams told the officers about the events of the weekend of the shooting. Prior to their testimony, defense counsel made a continuing objection to the admission of their testimony.

Williams contends that he was not sufficiently advised of *Miranda* rights on the morning of his arrest because the rights were read to him immediately after the officers roused him from early morning sleep and he was not asked if he chose to waive his *Miranda* rights prior to his statement to Detective LaRue. Williams then argues that the statements he made to Detective Langer were inadmissible because they were tainted by the earlier statements he made when suddenly awakened and arrested.

In the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the United States Supreme Court held the prosecution cannot use statements, whether inculpatory or exculpatory, stemming from custodial interrogation, un-

less it proves that procedural safeguards were used to secure the defendant's privilege against self-incrimination. These safeguards include informing the person in custody, prior to interrogation, of his or her Fifth Amendment rights to remain silent, to consult with an attorney, and to have an attorney present during interrogation. Further, if the person in custody states that he or she wants an attorney, all questioning must cease until the attorney is present. 384 U.S. at 444-45. *State v. Cady*, 254 Kan. 393, 402, 867 P.2d 270 (1994). A waiver of *Miranda* rights need not be in writing. *State v. Alexander*, 12 Kan. App. 2d 1, 6, 732 P.2d 814, *rev. denied* 241 Kan. 839 (1987).

Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether it was the product of the free and independent will of the accused. A statement may be considered voluntary if the accused was not deprived of the free choice to admit, deny, or refuse to answer. *State v. Lane*, 262 Kan. 373, 385, 940 P.2d 422 (1997).

When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given; and admits the statement into evidence at the trial, this court accepts that determination if it is supported by substantial competent evidence. *State v. Lewis*, 258 Kan. 24, 36, 899 P.2d 1027 (1995).

We have reviewed the record and conclude that the trial court did not err in admitting Williams' statements.

## AMENDMENT OF COMPLAINT

On May 3, 1996, several days prior to the first trial, the defense counsel moved to dismiss the complaint because the complaint failed to properly state the offenses charged. The complaint alleged "maliciously" instead of "intentionally" in the elements of the crimes of premeditated murder and attempted premeditated murder. The court denied the defendant's motion to dismiss and al-

lowed the State to amend the complaint by interlineation. Williams contends that the trial court erred in allowing the amendment to the complaint because the addition of the word "intentionally" charged a different crime.

K.S.A. 22-3201(e) allows the trial court to permit an information to be amended at any time before verdict if no new crime is charged and if substantial rights of the defendant are not prejudiced. *State v. Rasch*, 243 Kan. 495, 758 P.2d 214 (1988). When the defendant and counsel are present and permission is obtained from the judge, the State may orally amend the complaint or information any time before the verdict or finding, if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. The amendment may be shown by (1) interlineation on the complaint or information, (2) the filing of an amended information, or (3) a journal entry stating the amendment. *Rasch*, 243 Kan. at 501.

Williams does not specifically allege what prejudice occurred, and none is evident. The amendments to the complaint were made on May 3, 1996, several days before the first trial. The amendments did not charge an additional or different crime but conformed the complaint to the statutory definition of first-degree premeditated murder. Based upon the amended complaint the jury was instructed on the statutory element of the crimes. The trial court did not err in allowing the State to amend the complaint.

## LESSER INCLUDED OFFENSE

At the instructions conference, Williams requested that the jury be instructed on the defense of another and aggravated battery as a lesser included offense of the two murder charges and the four attempted murder charges. The judge agreed to instruct on the defense of another but, without stating why, summarily denied Williams' request to instruct on aggravated battery.

In *State v. Warbritton*, 211 Kan. 506, Syl. ¶ 1, 506 P.2d 1152 (1973), we held it is the duty of the trial court to instruct the jury, not only as to the offense charged, but as to all lesser offenses of which the accused might be found guilty under the information and upon the evidence adduced, even though such instructions

have not been requested or have been objected to. That principle was later embodied in K.S.A. 21-3107(3).

In *State v. Carpenter*, 215 Kan. 573, 527 P.2d 1333 (1974), the court disregarded the plain statement of K.S.A. 21-3107(3) and stated that no party may assign as error the giving or failure to give an instruction not requested unless the instruction is clearly erroneous. The statement in *Carpenter* was based on the improper application of K.S.A. 22-3414(3) to an instruction on lesser included offenses. K.S.A. 22-3414(3), as applied generally to the review of instructions in criminal cases, requires that a timely and specific objection be made unless the instruction is clearly erroneous. Where error is assigned to the failure to give an instruction on lesser included offenses, the specific statute, K.S.A. 21-3107(3), controls and under that statute it is not necessary that the instruction be clearly erroneous for a non-objecting party to raise the issue on appeal. In *State v. Weyer*, 210 Kan. 721, 727, 504 P.2d 178 (1972), we discussed the rationale behind this distinction and said:

"Plain, unambiguous language is used in this statute and the meaning is clear. No longer is the choice of giving instructions in a situation described therein left to counsel or to the accused, although their views are, of course, to be considered. The statute explicitly places on the trial judge the duty of giving whatever instructions are appropriate upon his analysis of the law and the evidence, and this despite the requests or even the objections of the parties. . . . The statute is specific in nature and, where it is applicable, must control over the general provision contained in K.S.A. 1971 Supp. 22-3414(3) that no party may assign as error the giving or failure to give an instruction unless he objects thereto."

The holding in *Carpenter* was accordingly modified to conform with the principle expressed in *State v. Warbritton* and *State v. Weyer*. *State v. Arney*, 218 Kan. 369, 374-75, 544 P.2d 334 (1975).

A criminal defendant has a right to an instruction on all lesser included offenses supported by the evidence at trial so long as (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory and (2) the evidence at trial did not exclude a theory of guilt on the lesser offense. *State v. Moncla*, 262 Kan. 58, 73-74, 936 P.2d 727 (1997).

## First-Degree Premeditated Murder

The jury was instructed on two counts of first-degree premeditated murder. Even though the victims died as a result of the shooting, Williams asserts the court had a duty to instruct the jury on the lesser included offense of aggravated battery. We disagree; this rationale defies logic.

In the context of a multiplicity analysis, Justice McFarland, in *State v. Smith*, 245 Kan. 381, 391-92, 781 P.2d 666 (1989), stated that an act of first-degree premeditated murder by means of shooting, beating, or stabbing, etc. requires proof of an aggravated battery. Where the victim survives the shooting, beating or stabbing, the charge could be attempted murder or aggravated battery but not both. Where a victim dies from an aggravated battery, a homicide has occurred and the battery merges into the homicide.

Two victims died as a result of the shooting. The trial court did not err in refusing to instruct the jury on aggravated battery as a lesser included offense to the two charges of first-degree premeditated murder.

## Attempted First-Degree Murder

Attempted first-degree murder requires proof of an overt act toward the perpetration of first-degree murder, which is the killing of a human being committed intentionally and with premeditation. K.S.A. 21-3301; K.S.A. 21-3401(a). The elements of aggravated battery are intentionally causing bodily harm to another person with a deadly weapon. K.S.A. 21-3414(a)(1)(B). The jury was instructed on the four counts of attempted murder in the first degree and the lesser offenses of attempted murder in the second degree, *i.e.*, murder done in the heat of passion, upon a sudden quarrel, or upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person, and attempted voluntary manslaughter, a killing done in the heat of passion or upon a sudden quarrel or upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person.

Williams contends that based upon the evidence, his claim of defense of another, and the judge's instructions, the jury could have

found that he recklessly fired into the crowd or attempted to defend his friend from the crowd and, therefore, the judge was required to instruct on the lesser offense of aggravated battery.

K.S.A. 21-3107 states the jurisdictional authority for convicting the defendant of an included crime as an alternative to the crime charged in the complaint. Prior to 1998, K.S.A. 21-3107, the statute relevant to the charges in this case, provided in part:

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(a) A lesser degree of the same crime;
"(b) an attempt to commit the crime charged;
"(c) an attempt to commit a lesser degree of the crime charged; or
"(d) a crime necessarily proved if the crime charged were proved."

K.S.A. 21-3107(3) further requires that in cases where the crime charged includes some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the complaint, information, or indictment and upon the evidence adduced.

*State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), provides a two-pronged test for determining if there is a lesser included crime under K.S.A. 21-3107(2)(d). Under the first prong, the statutory elements of the crime charged and the alleged lesser included crime are examined. If all of the statutory elements of the alleged lesser crime will automatically be proved if the State establishes the elements of the charged crime, the alleged lesser crime is an included crime of the greater. 243 Kan. at 368. If no included crime is found under the first prong, there may still be an included crime under the second prong of the test. Under the second prong, the charging document is examined to determine whether the evidence that must be adduced at trial to prove the crime charged would also necessarily prove another crime. If another crime is necessarily proved by proving the charged crime, the former is an included crime. 243 Kan. at 368. K.S.A. 21-3107 was revised by the legislature in 1998, effective July 1, 1998, and, among other changes, the provisions in subsection (2)(d) and (3) were deleted.

The State asserts that this court's finding in *State v. Dixon*, 248 Kan. 776, 811 P.2d 1153 (1991), clearly states the trial court was not required by K.S.A. 21-3107(2)(d) to instruct on aggravated battery as a crime necessarily proved if the crime charged was proved. In *Dixon*, the defendant argued that the trial court failed to follow its statutory duty to instruct on aggravated battery. At the time *Dixon* was decided, K.S.A. 21-3414 provided, in part: "Aggravated battery is the unlawful touching or application of force to the person of another with intent to injure that person or another . . . ." Count 3 of the information charging Dixon alleged:

" 'CAIN DIXON, JR. did then and there unlawfully, willfully, towards the perpetration of the crime of First-degree Murder, as defined by K.S.A. 21-3401, commit the following overt act, to-wit: *shot at* Eddie C. McIntosh with a shotgun, with the intention to commit said crime, and the said CAIN DIXON, JR. failed, was prevented or intercepted in executing said crime by officers of the Wichita Police Department.' [Emphasis added.]" 248 Kan. at 784.

Dixon contended the information, read in the light of the facts adduced at trial, established that the victim was actually shot. Dixon asserted, based on the facts, the State necessarily proved the elements of aggravated battery in establishing the elements of the alleged attempted first-degree murder. The State argued that under the information as written, it was required to prove only that Dixon committed an overt act towards the perpetration of first-degree murder. Applying the second prong of the *Fike* test, the *Dixon* court noted that the information stated Dixon had shot at the victim and concluded that under such circumstances, aggravated battery was not a lesser included offense and the trial court's refusal to give an aggravated battery instruction was not error.

Does the rationale of *Dixon* apply to this case? We note that Counts 3 through 6 of the State's amended complaint charged Williams with attempted first-degree murder. The complaint alleged:

"Further, That on or about the 24th day of September, 1995, in the City of Olathe, County of Johnson and State of Kansas, ALFRED JEROME WILLIAMS *did then and there unlawfully, feloniously and willfully* commit an overt act, to-wit: obtain a .22 caliber handgun from another; travel to Olathe North High School in possession of a .22 caliber handgun; and *shoot a .22 caliber handgun* toward a group of people, *striking* [the victim's name] toward the perpetration of the crime of First-degree Murder, as defined by K.S.A. 21-3401(a), intending to commit

such crime, but failed in the perpetration thereof, a severity level 1 person felony, in violation of K.S.A. 21-3301, K.S.A. 21-3401(a) and K.S.A. 21-4704."

Clearly, if the State proved attempted first-degree murder in this case as alleged in the complaint, *i.e.*, each of four victims was struck by shots fired by Williams, it would have necessarily proved aggravated battery. Therefore, as charged, aggravated battery is a lesser included offense of attempted first-degree murder. Based upon *Dixon* and pursuant to K.S.A. 21-3107(2)(d), the trial court had an affirmative duty to instruct the jury on aggravated battery as a lesser included offense charged and established by the evidence.

## IS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE CONVICTIONS?

Williams contends that the evidence is insufficient to sustain the convictions of first-degree premeditated murder and attempted first-degree murder. When the sufficiency of the evidence is challenged, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Claiborne*, 262 Kan. 416, 425, 940 P.2d 27 (1997).

Williams cites to evidence that Williams' friend, Jeff Dunn, was under attack at ONHS at the time of the shooting and argues that a reasonable person could find that he shot into the crowd to defend his friend. Williams is asking this court to believe his theory of defense. The function of weighing the evidence and passing on credibility belongs to the jury, not to us. A verdict secured on substantial competent evidence will not be disturbed on appellate review. *State v. Borthwick*, 255 Kan. 899, 904-05, 880 P.2d 1261 (1994). The jury did not believe Williams' theory of defense, and this court will not reweigh the evidence. Viewed in the light most favorable to the prosecution, a rational factfinder could have found Williams guilty beyond a reasonable doubt. Therefore, Williams' convictions should be affirmed.

Affirmed in part and reversed in part. The convictions for attempted first-degree premeditated murder are vacated, and the

matter is remanded for a new trial on the charges of attempted first-degree premeditated murder.